IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FRANKLIN C. EDMONDS,

                ORDER

          Plaintiff,

                08-cv-644-bbc

     v.

OPERATING ENGINEERS LOCAL 139,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is the second of two civil actions for monetary relief under Title VII of the Civil Rights Act of 1964 in which plaintiff Franklin Edmonds alleges that he has been discriminated against by his union, defendant Operating Engineers Local 139. Also, plaintiff alleges a state-law breach of contract claim against defendant.   He is proceeding pro se. Defendant has moved to dismiss plaintiff's Title VII claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

On January 22, 2009, this court granted defendant's motion to present certain documents outside the pleadings without converting the motion to dismiss into a motion for summary judgment.  These are docket sheets and documents submitted in previous cases filed in this court and in the Eastern District of Wisconsin in which plaintiff sued defendant. From the facts contained in plaintiff's complaint as well as the documents submitted by

defendant, I conclude that plaintiff's Title VII claim must be dismissed under the doctrine of claim preclusion.  Further, I will not exercise supplemental jurisdiction over plaintiff's state-law claim because I am dismissing his Title VII claim.

Before discussing the motion to dismiss I will address several preliminary motions filed by the parties.  First, defendant has filed a motion to strike from the docket a copy of a January 1, 2009 letter plaintiff sent to defendant.  The letter, dkt. #15, was sent by plaintiff to the court and docketed even though it did not bear a case number and is not a motion or other paper related to the case at hand.  Because it appears that the letter was docketed inadvertently, I will grant defendant's motion to strike it from the docket.

Also, plaintiff has filed motions to present documents outside the complaint and to strike the copy of the consent decree defendant attached to its brief because it is "incomplete."  He wishes to replace it with a copy attached to his motion to present documents outside the complaint.  Plaintiff seeks to have more than 50 other documents considered with the motion to dismiss. These documents range from court documents in plaintiff's earlier Eastern District of Wisconsin cases to a copy of plaintiff's cellular phone bill.  I will deny these motions as moot.  Even if I considered them and replaced defendant's version of the consent decree with plaintiff's, nothing in those documents would affect the analysis of plaintiff's claims.

Turning to the substance of plaintiff's complaint, I draw the following facts from the complaint as well as public records I permitted defendant to submit from outside the record.

2

FACTS

A. <u>Current Case</u>

Plaintiff Franklin Edmonds is a member of defendant Operating Engineers Local 139. He was involved in previous Title VII litigation against defendant, which culminated in a consent decree under which the parties operated.

At an unspecified time, plaintiff was laid off from his job with Mainline Sewer and Water Construction Company.  He checked in with defendant's District A and B union halls.  On November 7, 13, 21 and 27, 2006, defendant's dispatcher told plaintiff his position on the out-of-work list.  His position "fluctuat[ed]" during that time period. Plaintiff called Dennis Luciani, defendant's president, to discuss this problem, and then it stopped.  The dispatcher was removed from his position, a different employee began handling the job referral list and plaintiff's position on the out-of-work list started to fluctuate again.

At some point, Guy Yuker became the new dispatcher, but plaintiff's position on the out-of-work list continued to fluctuate.  On January 16, 2007, plaintiff wrote Yuker, asking about his "numbers fluctuating" and whether people of color were being dispatched during the winter.  Plaintiff requested copies of the out-of-work list from October 26, 2006 to January 16, 2007.  Yuker declined plaintiff's request for records, stating that defendant's policy was not to provide copies of the out-of-work list or other referral hall records to its members in an effort to prevent contractors and members from circumventing its non-

3

discriminatory referral procedures.  He added that Carin Clauss, the court-appointed monitor for the consent decree entered into in previous Title VII litigation between the parties, had expressed her agreement with this policy and has refused to provide copies of the out-of-work list to plaintiff.  Yuker stated that any concerns plaintiff had should be directed to Clauss because she is the court-appointed monitor.

On January 26, 2007, plaintiff called Clauss and asked her whether she had any copies of the out-of-work list.  Clauss said she did not.  He told her he would be filing a complaint with her about defendant's retaliating against him by manipulating his name on the out-of-work list.  He requested from Clauss copies of the out-of-work list from October 26, 2006  to January 28, 2007 and all of her findings concerning his placement on those lists.  In a January 28, 2007 letter to Clauss, plaintiff stated that defendant was violating its constitution and bylaws by denying him copies of the out-of-work list.

More than two weeks passed before Clauss began to investigate his complaints.  On February 7, 2007, she visited the District A union hall for only one hour, stating that a snowstorm kept her from staying longer, but that Yuker had faxed her what she needed to investigate her complaints.

On February 12, 2007, plaintiff wrote to District Judge Charles N. Clevert Jr., the judge presiding over the case in which the consent decree had been entered.  Plaintiff stated that defendant was retaliating against him by manipulating his name on the out-of-work list, and that Clauss refused to show him any documents regarding her findings after she

4

investigated his complaint. He accused Clauss of violating defendant's constitution and bylaws by refusing to provide plaintiff copies of the out-of-work list. In a second letter dated February 12, 2007, plaintiff requested that Clauss give him all of her findings from her investigation of his complaint. Judge Clevert denied this request, but Clauss gave plaintiff a summary of her findings dated February 12, 2007. However, the summary included "no job classifications, no out-of-work lists, no dispatch forms and no fax requests."

On February 23, 2007, plaintiff met with Clauss concerning his complaint and her findings. Clauss refused to show him her findings or give him copies. She did state that she saw that someone had added Districts C and D to plaintiff's out-of-work status report. Plaintiff asked her whether she had investigated this, since she was aware that he had worked only out of Districts A and B. She said she had not investigated because the addition did not pertain to his complaint. In response to a question, she said she had never seen a written policy stating that defendant would not share the out-of-work lists with members. Plaintiff stated further that "when [defendant's counsel] stated this policy to Charles N. Clevert Jr. in court, and that [Clauss] agrees to this policy, at no time in front of this Judge did you state that you'd never seen this policy or agreed to it."

On March 19, 2007, plaintiff went to the District B union hall and asked the dispatcher whether he could see the out-of-work list for that week. The dispatcher refused to show the list to plaintiff until after she made a phone call. Plaintiff began copying names and job classifications off the list. Plaintiff left but later returned to finish copying the list.

5

Ryan Oehlhof, the District B office manager, came out from the back of the office, told plaintiff he would not be allowed to continue to copy the out-of-work list and took the list away from him. Plaintiff left the union hall. Later that day, plaintiff called the union hall and spoke with Oehlhof. Plaintiff asked him whether he would fax him a copy of the policy stating that union members are not allowed to copy the out-of-work list. Oehlhof said he would send him a copy. The same day, plaintiff sent Oehlhof a written request for the policy.

On March 21, 2007, plaintiff sent a second written request to Oehlhof for a copy of the policy. That afternoon, plaintiff received a fax from Oehlhof. Attached was a copy of page 8 of the union's non-discriminatory referral procedures section 9(B) and a list of all people who had received a copy of the fax. (A copy of this fax attached to plaintiff's complaint shows that the procedure stated, "Each referral office shall post in a public place on its premises a current copy of the out-of-work register on a weekly basis. **Copies of the out-of-work registers will NOT be provided and no photographing, videotaping or other duplication of the out-of-work register will be permitted.**" (Emphasis in original.))

Plaintiff called Terrence E. McGowan, the District A business manager, and Charles Warner, the District C manager, and asked them their opinions regarding Oehlhof's fax. On March 23, 2007, plaintiff received McGowan's response, in which he stated that he and Luciani agreed "100%" with Oehlhof's message. Plaintiff called Luciani and asked him to

6

"speak for himself" regarding section 9(B).  Luciani faxed plaintiff a response on April 3, 2007 (plaintiff does not explain what Luciani stated in his response).

Also, plaintiff called Clauss about Oehlhof's fax.  In a March 23, 2009 response, Clauss stated that plaintiff insisted that the consent decree gave him the right to a personal copy of the out-of-work list for Districts A and B.  Plaintiff has never said that the consent decree gave him that right.  Rather, he has stated being a member of the union in good standing gave him the right to a copy of the list.  Counsel for defendant has told state and federal judges as well as a "civil rights bureau director" that the policy of not releasing its out-of-work list has been in place since 2003.  However, this policy does not exist.

## B. Previous Litigation

On August 12, 1997, a group of plaintiffs, including plaintiff Edmonds, filed a class action in the Eastern District of Wisconsin, case no. 97-cv-857, alleging that defendant had violated Title VII by, among other things, engaging in the manipulation of its job referral book.  They contended that this manipulation resulted in discrimination against women, African-Americans, Hispanics and Native Americans.  In an order dated June 28, 2002, the court approved a consent decree and dismissed the case.  The consent decree was to remain in effect for four years.  It created job referral processes and established a court-appointed monitor to oversee the implementation of the terms of the decree.  It provided that, if at any time during that four-year period a class member thought that the decree had been

7

violated, that class member could file for relief with the court.  The parties selected Carin Clauss as the monitor.

Plaintiff filed a complaint in the Eastern District of Wisconsin on May 16, 2006, case no. 06-cv-592, alleging that defendant had violated the consent decree by continuing to manipulate its job referral book to his exclusion.  Among other claims against Clauss, plaintiff alleged that she was not monitoring defendant adequately and that she was violating her duties as consent decree monitor.  Plaintiff's complaint included allegations that Clauss allowed defendant to deny him copies of the out-of-work list, which enabled it to manipulate job referrals.  The court construed the complaint as a motion in case no. 97-cv-857 to reopen the case and enforce the consent decree.  Also, the court directed Clauss to submit a report in support of her contention that she had complied with her duties as the consent decree monitor.

On September 1, 2006, the court held a hearing on plaintiff's motion.  The court accepted Clauss's report, which included her reasons for believing that it was appropriate for defendant to refuse plaintiff's request for a personal copy of the out-of-work list.  Clauss noted that there were two reasons for not circulating the list: (1) defendant did not want contractors to have access to the list because they could use that information to request out-of-work members they preferred (requests that defendant was contractually obligated to grant) rather than be assigned members at the top of the list; and (2) the out-of-work list was only marginally useful in ascertaining whether there was compliance with job referral

8

procedures, because the list itself did not include members' skill types and levels, which factored into referrals. Clauss concluded there was no statistical evidence of discrimination in the referral process.

The court ordered plaintiff to submit by October 2, 2006, a more definite written statement of alleged current violations of the consent decree and to identify with particularity the evidence supporting his claims. Plaintiff submitted his response on September 28, 2006. The response focused on allegations that Clauss had violated the consent decree in various ways in the years 2003-2005, but included allegations that defendant had denied plaintiff copies of the out-of-work list and that defendant's counsel had stated incorrectly that since 2003 it was defendant's policy not to give out copies of the list. The court received replies from defendant and Clauss.

The court held a hearing on plaintiff's motion on November 13, 2006. Clauss reported that she believed defendant had substantially complied with the consent decree, and she recommended that the decree should expire. The court found that plaintiff had failed to produce evidence of violations with the requisite specificity. It asked defendant whether it would agree to extend the consent decree for the limited purpose of giving class members a final opportunity to contact Clauss regarding complaints about the operation of the referral system over the last 60-90 days. Defendant agreed.

On December 5, 2006, plaintiff submitted a letter reiterating various allegations of wrongdoing by defendant and Clauss, including the allegation that they had denied him

9

copies of the out-of-work list.  On January 9, 2007, Clauss submitted an addendum to her final report that addressed the final notice mailed out to class members by defendant.  In the addendum, Clauss stated that she "continue[s] to believe that there is no evidence that the Union has not fully complied with the terms of the Consent Decree," and again recommended that the decree be allowed to expire.

On February 21, 2007, Clauss submitted to the court a copy of a letter she wrote to plaintiff replying to a January 29, 2007 complaint he sent to her.  Clauss explained that she did not see her role as monitor as one requiring her to collect documentation and turn it over to union members so they could initiate lawsuits.  She went on to set out in detail instances when plaintiff had alleged that job referrals were manipulated and she explained why those referrals complied with the consent decree.

On March 22, 2007, plaintiff filed a motion for removal of Clauss as the court-appointed monitor.  On March 26, 2007, Clauss filed a copy of a letter she wrote in response to another complaint faxed to her by plaintiff on March 21, 2007.  In that letter, Clauss referred to plaintiff's correspondence with Oehlhof, and explained her reasons for not providing plaintiff copies of the out-of-work list, including defendant's referral procedures, which prohibited defendant from providing copies of the list to members and prohibited members from duplicating the list.  Clauss stated it was her hope "that we will have a ruling from the Court on this issue soon, as it continues to be an area of disagreement."

On March 30, 2007, the court issued an order denying plaintiff's motions to enforce

the consent decree and to remove Clauss.  The court noted plaintiff's claims, including his claim that he was denied copies of the out-of-work list.  It noted also the multiple filings by plaintiff and Clauss addressing plaintiff's continuing complaints.  The court ruled:

> As stated at the hearing held on November 13, 2006, the court found that Edmonds failed to meet his burden of proving with specific evidence that defendant violated the consent decree. Since that finding, the court has given Edmonds numerous opportunities to provide the court with particular evidence of violations by the defendant.  Edmonds, however, has failed to do so and his motions and responses still contain only blanket allegations of violations, none of which go to the heart of the defendants' duties under the consent decree. Nor has Edmonds provided the court with any evidence that the monitor has failed to adequately monitor the defendant. Because the court can find no substantive violation of the consent decree by the defendant, or credible evidence that the monitor materially breached her duties under the consent decree, it will deny Edmonds' motion to enforce the consent decree.

The court ordered that the consent decree was expired and closed the case.


OPINION

Under Fed. R. Civ. P. 12(b)(6), a claim or entire complaint may be dismissed for failure to state a claim upon which relief can be granted.  Although a plaintiff need satisfy only a liberal notice pleading standard, Gray v. Dane County, 854 F.2d 179, 182 (7th Cir. 1988), its claim will be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007).  In making this determination in this case, the court must construe the complaint liberally because plaintiff is litigating this action pro se.  Haines

11

v. Kerner, 404 U.S. 519, 521 (1972).

This is the second of two Title VII cases filed by plaintiff against defendant. In the first case, I granted defendant's motion to dismiss plaintiff's claim that defendant conspired with employers and manipulated job referrals to deny him work because his claims were barred by the doctrine of claim preclusion. Edmonds v. Operating Engineers Local 139, 08-cv-567-bbc, decided June 1, 2009. In his current complaint, plaintiff frequently discusses allegations again non-parties, such as the court-appointed monitor, and it is difficult to ascertain the precise contours of his claims. The crux of his complaint is that defendant discriminated against him by refusing to provide him with copies of the out-of-work list, enabling it to manipulate job referrals. For reasons similar to those I set out in case no. 08-cv-567-bbc, I must grant defendant's motion to dismiss his Title VII claim under the doctrine of claim preclusion.

Under that doctrine, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. Allen v. McCurry, 449 U.S. 90, 94 (1980). In general, "[t]he doctrine of res judicata (claim preclusion) requires litigants to join in a single suit all legal and remedial theories that concern a single transaction." Perkins v. Board of Trustees of the University of Illinois, 116 F.3d 235, 236 (7th Cir. 1997). The three requirements of claim preclusion under federal law are (1) an identity of parties or their privies; (2) an identity of causes of action; and (3) a final judgment on the merits. Central States, Southeast and Southwest Areas Pension Fund v.

12

Hunt Truck Lines, Inc., 296 F.3d 624, 628 (7th Cir. 2002). When these elements are satisfied, the judgment in the earlier suit bars further litigation of issues that were either raised or could have been raised therein. Kratville v. Runyon, 90 F.3d 195, 197-98 (7th Cir. 1996).

I conclude that all three elements of claim preclusion are met in this case. First, as to an identity of parties, there is no dispute that plaintiff sued defendant in Eastern District of Wisconsin case no. 06-cv-592, and that his claims were construed as a motion to enforce the consent decree in case no. 97-cv-857, a case in which plaintiff sued defendant. The other two elements require further discussion.

An identity of causes of action exists when both the prior and subsequent claims arise out of the same transaction, defined for claim preclusion purposes as "a single core of operative facts giving rise to a remedy." Car Carriers, Inc. v. Ford Motor Co., 789 F.2d 589, 593 (7th Cir. 1986). "[T]wo claims are one for purposes of [claim preclusion] if they are based on the same, or nearly the same, factual allegations." Herrmann v. Cencom Cable Assoc., Inc., 999 F.2d 223, 226 (7th Cir. 1993) (citations omitted). In other words, "a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." Okoro v. Bohman, 164 F.3d 1059, 1062 (7th Cir. 1999).

I conclude there is an identity of causes of action between plaintiff's current claim and a claim brought in his earlier cases. Plaintiff's claim that defendant manipulated job referrals

13

in part by withholding copies of the out-of-work list was a longstanding grievance. As Clauss noted in her September 1, 2006 report, plaintiff's insistence that he should be entitled to copies of the out-of-work list goes back to at least July 2003. Both cases involve a series of events in which defendant repeatedly denied plaintiff copies of the out-of-work list. Plaintiff's current claim centers around defendant's conduct between November 2006 and March 2007. Although plaintiff's motion to enforce the consent decree in case no. 97-cv-857 was originally filed on May 16, 2006, predating the events contained in plaintiff's current complaint, plaintiff submitted numerous documents both to the court and to Clauss (which were then addressed by Clauss in correspondence with the court) supplementing his claim in case no. 97-cv-857 to include allegations about defendant's actions over a period of time from roughly 2004 through March 2007. Some, but not all, of plaintiff's allegations in the present case regarding the time period between November 2006 and March 2007 were considered in the earlier case. Nonetheless, his current allegations fall within the scope of his claim in case no. 97-cv-857 because plaintiff's claim regarding the out-of-work list in the earlier case involves the entire time period at issue in the present case. Restatement (Second) of Judgments § 24, cmt. d (1980) (when defendant is accused of series of acts that were substantially of same sort and similarly motivated, plaintiff cannot maintain second suit for acts that could have been raised in earlier case.)

Finally, defendant argues that when the Eastern District of Wisconsin court denied plaintiff's motion to reopen and enforce the consent decree in case no. 97-cv-857 and

ordered the consent decree terminated, its order was a final judgment on the merits on plaintiff's claims.  Generally, an order constitutes a final decision if it ends the litigation and leaves nothing to be decided in the district court.  Adams v. Lever Bros. Co., 874 F.2d 393, 394 (7th Cir. 1989).  "The test for finality is not whether the suit is dismissed with prejudice or without prejudice, on the merits or on a jurisdictional ground or on a procedural ground . . . [t]he test is whether the district court has finished with the case."  Hill v. Potter, 352 F.3d 1142, 1144 (7th Cir. 2003).

As I explained in the June 1, 2009 order in the parties' previous case before this court, the procedural circumstances of case no. 97-cv-857 are unusual with regard to claim preclusion.  It is common to see the defense of claim preclusion raised in situations in which a plaintiff brings an action and the parties disagree whether a claim was dismissed with or without prejudice in an earlier case.  Here, the order in an earlier case was not an order of dismissal; plaintiff brought his claims originally in a new complaint in case no. 06-cv-592, but his claims were converted into a motion to reopen and enforce the consent decree in case no. 97-cv-857.  In its March 30, 2007 order, the court denied plaintiff's motion to reopen the case and enforce the consent decree and ordered the consent decree expired.

In the June 1 order in the parties' previous case, I concluded that the March 30, 2007 order was a final judgment on the merits of plaintiff's previous claims.  Although plaintiff brings a new claim in the present case, there is no reason to depart from the reasoning in the June 1 order.  Regardless of the unusual procedural circumstances in case no. 97-cv-857, it

15

is clear that the March 30, 2007 order was a final judgment on the merits. Certainly it indicated that the litigation was ended; the record in case no. 97-cv-857 shows that the court went through numerous rounds of briefing and hearings in order to identify all outstanding complaints that the class members, including plaintiff, had raised concerning the consent decree before finally declaring that the decree had expired. In particular, the court noted plaintiff's claim of denial copies of the out-of-work list and gave plaintiff multiple opportunities to flesh out his claims before concluding that he had failed to present "particular evidence of violations by the defendant" and denying his motion. There is no reason that the March 30, 2007 order should be treated differently from other orders that would normally be considered final judgments on the merits, such as an order dismissing a plaintiff's complaint with prejudice following numerous attempts by the plaintiff to adequately state a claim. To hold otherwise would render an absurd result, whereby plaintiff would have been able to bring his claims under case no. 97-cv-857, receive an adverse ruling, yet be able to bring the same claims in the current case and receive another bite of the same apple. Because defendant has shown that the three requirements of claim preclusion, identity of parties, identity of claims and a final judgment on the merits, are met as to plaintiff's claim in this case, I will grant its motion to dismiss plaintiff's Title VII claim.

I will address a final issue. Although I understand plaintiff to be bringing a Title VII discrimination claim against defendant (plaintiff attaches an Equal Employment Opportunity Commission right-to-sue letter to his complaint), he also makes repeated

16

references to his belief that defendant violated its constitution and bylaws by withholding copies of the out-of-work list.  To the extent that he plaintiff is attempting to make out a state-law breach of contract claim against defendant, see Korzen v. Local Union 705, International Brotherhood of Teamsters, 75 F.3d 285, 288 (7th Cir. 1996) (suit based on breach of local union's constitution is state rather than federal claim), I will not exercise supplemental jurisdiction over this claim because I am dismissing plaintiff's Title VII claim. 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over claim if it dismisses all claims over which it has original jurisdiction); see also Khan v. State Oil Co., 93 F.3d 1358, 1366 (7th Cir. 1996) (presumption against retaining jurisdiction of supplemental state law claims when federal claims are dismissed before trial).  If plaintiff wishes, he can pursue these claims in state court, unlikely as it is that he will succeed on them.

ORDER

IT IS ORDERED that

1.  Defendant Operating Engineers Local 139's motion to dismiss plaintiff Franklin Edmonds's Title VII claim, dkt. #16, is GRANTED.  That claim is DISMISSED with prejudice because it is barred under the doctrine of claim preclusion.

2.  Plaintiff's state-law breach of contract claim is DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3) to his refiling the claim in state court.

17

3.  Defendant's motion to strike from the docket a copy of a January 1, 2009 letter plaintiff sent to defendant, dkt. #20, is GRANTED.  The clerk of court is directed to strike the letter, dkt. #15, from the docket.

4.  Plaintiff's motions to strike the copy of the consent decree placed in the record by defendant and to present documents outside the complaint, dkt. ##23, 25, are DENIED as moot.

5.  The clerk of court is directed to enter judgment for defendant on plaintiff's federal claim and close this case.

Entered this 17th day of July, 2009.

BY THE COURT:

BARBARA B. CRABB
District Judge

18